**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **WALGREEN CO.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | **JURY DEMANDED** |
| | ) | |
| **OKABASHI BRANDS, INC.,** | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Walgreen Co. ("Walgreens"), by and through its undersigned attorneys, hereby files this Complaint for breach of contract against Okabashi Brands, Inc. ("Okabashi") alleging as follows:

## I. NATURE OF THE CASE

1. This is an action for breach of contract or, alternatively, unjust enrichment. It arises from breach of Okabashi's promises and obligations pursuant to the parties' contracts and agreements. Specifically, Okabashi sold footwear (the "Footwear") to Walgreens on a guaranteed-sale basis. Okabashi specifically agreed to: (1) refund Walgreens to the extent there were unsold units of the Shoes that were ultimately returned to Okabashi; (2) pay Walgreens to participate in various marketing promotions; and (3) pay any amounts that a post-audit of the parties' transactions performed by Walgreens found that it owed. In each of these regards, Okabashi has failed to live up to its agreements with Walgreens.

2. As a direct and proximate result of Okabashi's breaches of contract, Walgreens has suffered damages in an amount to be proven at trial, but not less than $184,648.22. This amount accounts for offsets that Walgreens has applied to Okabashi's account with Walgreens, as the parties agreed that Walgreens could do. Walgreens files this lawsuit to recover those damages.

## II. THE PARTIES

3. Walgreens is an Illinois corporation with its principal place of business at 200 Wilmot Road, Deerfield, Illinois, 60015. Walgreens is in the business of providing consumer goods and services, as well as pharmacy, health and wellness services, through thousands of retail drugstores throughout the United States.

4. Okabashi is an active Delaware corporation engaged primarily in the production and distribution of shoes and sandals. Okabashi's principal place of business is located at 4823 Roy Carlston Boulevard, Buford, Georgia 30518.

## III. JURISDICTION AND VENUE

5. This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because the citizenship of Walgreens and Okabashi is diverse and the amount in controversy is in excess of $75,000.

6. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims made in this lawsuit occurred within the Northern District of Illinois. Moreover, in the written agreement between them (discussed further below), the parties "consent[ed] to the exclusive jurisdiction of the courts of the State of Illinois or Federal District Court of the Northern District of Illinois and agree[d] to waive all objections as to venue and *forum non conveniens*."

## IV. FACTUAL ALLEGATIONS

### A. The Parties' Agreements

7. In 2011, Walgreens and Okabashi agreed that Walgreens would buy Footwear from Okabashi and stock the Footwear at its stores for resale to consumers. Walgreens and Okabashi agreed that these purchases by Walgreens would be pursuant to certain written agreements.

8. The written agreement through which all purchases by Walgreens from Okabashi were made was the Walgreen Co. General Trade and Electronic Data Interchange Agreement (the "GTA"). Okabashi, through its authorized representative Kerry Cunningham, signed the GTA with an effective date of November 1, 2011.

9. The GTA states in its preamble that: "The terms and conditions contained herein shall apply to all merchandise . . . sold by Vendor [Okabashi], directly or indirectly through its distributors, to Walgreen[s]."

10. The GTA further provides in Section C(1) that: "[Okabashi]'s performance shall be in accordance with these terms, dating and conditions. Any other terms in [Okabashi]'s acceptance are rejected unless agreed to in writing and signed by Walgreen's authorized representative." Further clarifying that the GTA controlled the parties' relationship, Section D(8) of the GTA provides that: "In the event of a conflict between these terms or any purchase order issued by Walgreen[s], and any document issued by [Okabashi], the terms of this Agreement shall control." Section F(2) of the GTA further provides that: "No oral modification or waiver of any of the provisions of this Agreement shall be binding on either party."

11. The parties never signed any written modification of the GTA that contradicted or modified any of its terms.

12. Section C(2) of the GTA states that "if a purchase order is designated as a 'Guaranteed Sale,' . . . Walgreen[s] shall not be obligated to pay for any merchandise until after it is sold by Walgreen[s] in accordance with terms agreed upon by the parties."

13. Section C(2) of the GTA further states that "Walgreen[s] shall have the unrestricted right to rescind its purchase of the merchandise from [Okabashi] both before and after acceptance of such merchandise by Walgreen[s]."

14. Consistent with the GTA, all purchases by Walgreens from Okabashi were on a "Guaranteed Sale" basis such that Walgreens was not obligated to pay for the merchandise until it was sold pursuant to agreed-upon terms. Moreover, Walgreens had a right to return the merchandise to Okabashi (with no payment obligation having arisen), which would provide a corresponding refund to Walgreens for the Footwear and costs incurred by Walgreens when it returned any unsold units of Footwear to Okabashi, including any agreed-to upcharge fee and freight expenses.

15. Additionally, Section E(1) of the GTA states "[Okabashi] is subject to all policies, procedures, terms and conditions as posted on Walgreen's SupplierNet website located at https://vendor.walgreens.com and all such policies, terms and conditions, as updated from time to time, are hereby incorporated herein and made a part hereof."

16. Lastly, Section E(6) of the GTA expressly incorporates Walgreens' Post Audit Policy. The Post Audit Policy provides that "Walgreens reserves the right to audit all transactions up to two and one-half years from the end of the calendar year that the transaction occurred."

17. Okabashi also agreed to enter into deals with Walgreens, including a Co-Op Deal in 2023, whereby Okabashi agreed to a $50,000 commitment to Walgreens.

**B. Okabashi Breaches its Agreements with Walgreens**

18. Walgreens ordered Footwear from Okabashi at $10-$11 per unit, paid for the items and placed them for sale in its stores. However, the units of Footwear did not all sell, and some units were returned to Okabashi from Walgreens' distribution centers. Okabashi specifically agreed to a call-in of Footwear on May 25, 2023.

19. Consistent with the terms of the GTA and the call-in, Walgreens returned at least 14,440 units of Footwear to Okabashi between July 2023 and August 2023. Each unit of Footwear that Walgreens returned to Okabashi was authorized by the parties' agreements because it was sold

to Walgreens on a guaranteed sale basis. Okabashi accepted those returned items, for which Walgreens had paid Okabashi approximately $149,066.84.

20. Walgreens demanded this payment from Okabashi, but in breach of the parties' agreements, Okabashi has refused to pay this amount.

21. Consistent with the terms of the GTA, Okabashi agreed with Walgreens to participate in various promotions throughout the parties' business relationship, including a Co-Op Deal in 2023, whereby Okabashi agreed to a $50,000 commitment to Walgreens. Of that commitment, $33,333.32 remains unpaid.

22. There is also a post audit claim that Walgreens sought from Okabashi for unpaid invoices, consistent with the terms of the GTA, in the amount of $2,248.06. This amount is owed for other warehouse returns from 2023. Again, consistent with the parties' agreements, Walgreens demanded this payment from Okabashi. Again, in breach of those agreements, Okabashi has refused to pay these amounts.

23. In total, Okabashi owes Walgreens $184,648.22 arising from its breaches of its agreements with Walgreens.

## V. <u>CAUSES OF ACTION</u>

### <u>COUNT I: BREACH OF CONTRACT</u>

24. Walgreens re-alleges as Paragraph 24 of Count I paragraphs 1-23 above.

25. Walgreens and Okabashi contracted for Walgreens to buy Footwear from Okabashi on a "Guaranteed Sale" basis. Walgreens agreed to, and did pay $10-$11 per unit of Footwear.

26. Walgreens and Okabashi also contracted that any unsold units of Footwear could and would be returned to Okabashi. Okabashi agreed to refund Walgreens the amounts Walgreens had paid for those units.

27. Walgreens and Okabashi also contracted that Okabashi would participate in various marketing promotions and would reimburse Walgreens for the associated costs.

28. Walgreens and Okabashi also contracted that Walgreens could seek any amounts owing after an audit, for up to two and a half years.

29. The GTA and its incorporated policies, are valid and enforceable contracts.

30. Walgreens fully complied with its obligations pursuant to these contracts.

31. Okabashi, however, breached the terms of the parties' agreements, including by:

a. Accepting the return of unsold Footwear, but refusing to refund the amounts already paid by Walgreens;

b. Failing to reimburse Walgreens for its participation in various marketing promotions; and

c. Failing to make payment following the audit performed by Walgreens after these transactions.

32. Okabashi's breaches proximately caused Walgreens damages in the amount of at least $184,648.22.

**WHEREFORE**, Walgreens prays that judgment be entered in its favor and against Okabashi for damages in an amount to be determined by the Court, but not less than $184,648.22, plus pre-judgment interest, and for such other relief as the Court deems just and proper.

**COUNT II: UNJUST ENTRICHMENT (PLED IN THE ALTERNATIVE)**

33. Walgreens re-alleges as Paragraph 33 of Count II the foregoing allegations, except those alleging the existence of a contract between the parties, as if fully set forth herein.

34. By accepting return of the approximately 14,440 units of Footwear from Walgreens, but refusing to refund amounts already paid by Walgreens for those goods, and

benefitting by the cost to Walgreens incurred making those returns, Okabashi has unjustly received a benefit from Walgreens.

35. Okabashi's benefit was received to Walgreens' detriment, as Walgreens paid for the units of 14,440 that Okabashi now has and may re-sell.

36. Okabashi was unjustly enriched by its participation in various marketing promotions, the costs of which Okabashi has refused to reimburse Walgreens.

37. Allowing Okabashi to retain the benefits of its own wrongdoing, as alleged herein, would violate fundamental principles of justice, equity and good conscience, including by affording Okabashi the opportunity to sell the returned items twice.

**WHEREFORE,** Walgreens hereby requests that this Court enter Judgment in its favor and against Okabashi, awarding damages in an amount to be determined by the Court, but not less than $182,400.16, plus pre-judgment interest, and such other relief as the Court deems just and proper.

## VI. JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Walgreen Co. hereby demands trial by jury in this case.

Dated: February 10, 2025

Respectfully submitted,

**WALGREEN CO.**

By: /s/ Robert M. Andalman
One of its Attorneys

Robert M. Andalman (ARDC #6209454)
Rachael Blackburn (ARDC #6277142)
Emma E. Sander (ARDC #6342665)
**Aronberg Goldgehn Davis & Garmisa**
225 W. Washington St., Suite 2800
Chicago, IL 60606
Telephone: (312) 755-3161
Facsimile: (312) 828-9635
randalman@agdglaw.com
rblackburn@agdglaw.com
esander@agdglaw.com